**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Irakli Shomakhia,<br><br>Petitioner,<br><br>v.<br><br>United States Immigration and Customs Enforcement, et al.,<br><br>Respondents. | No. CV-26-06127-PHX-DWL<br><br>**ORDER** |

In an October 9, 2026 order, the Court stated that Petitioner's November 18, 2025 removal order appeared to be administratively final, because Petitioner waived the right to appeal and the Department of Homeland Security ("DHS") only appealed the grant of withholding of removal to Georgia, and that Petitioner's continued detention thus appeared to be governed by 8 U.S.C. § 1231(a)(6). (Doc. 8.) Given this understanding, the Court ordered Respondents to file a supplemental response addressing the legality of Petitioner's continued detention in light of *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.*)

In their supplemental response, Respondents "concede that the Government initiated the appeal to the Board of Immigration Appeals (BIA) and apologize for the confusion in our prior response" but "respectfully disagree that *Zadvydas* is the applicable framework for resolving this Petition." (Doc. 9 at 1.) According to Respondents, because "[t]he Government appealed the entire removal order which includes the grant of relief under Withholding of Removal," "there is no final removal order at this time." (*Id.* at 1-2.) Respondents further argue that *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), is

inapposite because Petitioner was placed in ordinary removal proceedings under 8 U.S.C. § 1229a rather than withholding-only proceedings. (*Id.* at 2.) Respondents conclude: "Petitioner remains detained under Section 1225(b)(1)(B)(ii), and that statute does not permit Petitioner's release on bond pending the outcome of the BIA appeal. However, if the Court believes Petitioner's detention has become 'unreasonably prolonged' then Respondents can hold a bond hearing if the Court deems it appropriate under these specific circumstances." (*Id.* at 4.) Petitioner did not file a supplemental reply.

The Court concludes that Petitioner's removal order is administratively final and that 8 U.S.C. § 1231(a)(6) now supplies the statutory basis for his detention. Because the parties' briefing does not fully engage with the relevant statutory and regulatory provisions, the Court explains its reasoning in some detail.

I. <u>Statutory Framework</u>

Whether § 1231(a)(6), which authorizes the detention of certain aliens "beyond the removal period," now supplies the statutory basis for Petitioner's detention turns on whether the "removal period" ever began. Under 8 U.S.C. § 1231(a)(1)(B), "[t]he removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." There is no dispute only subsections (i) or (ii) could apply here.

II. <u>The Removal Order Is Administratively Final</u>

An order of removal "shall become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Here, Petitioner's deadline to appeal (which he waived) was December 18, 2025. (Doc. 9-1 at 5.) Thus, the event described in

§ 1101(a)(47)(B)(ii) occurred no later than December 18, 2025.[1] The statute provides that finality occurs upon "the earlier of" the two specified events. Thus, although the BIA has not yet resolved DHS's appeal, any such decision could not affect the finality that has already attached under § 1101(a)(47)(B)(ii).

The accompanying regulation is to the same effect. It provides in relevant part that an order of removal entered by an immigration judge ("IJ") at the conclusion of proceedings under 8 U.S.C. § 1229a "shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals; (b) Upon waiver of appeal by the respondent; [or] (c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time." 8 C.F.R. § 1241.1. Here, Petitioner waived appeal (Doc. 9-1 at 5), so his removal order became final under § 1241.1(b) at the time of the waiver (i.e., November 18, 2025). At the latest, it became final under § 1241.1(c) once his time to appeal expired (i.e., December 28, 2025).

Contrary to Respondents' contention, nothing in § 1241.1 suggests that the finality of a removal order turns on whether *DHS* has chosen to appeal a grant of withholding of removal or protection under the Convention Against Torture ("CAT"). Instead, finality hinges on the *respondent's* decision whether to appeal. Although Respondents invoke § 1241.1(a), that provision identifies one of several alternative events that renders a removal order final. It does not establish that *any* pending appeal, by *any* party, of *any* portion of an IJ's decision defers finality. Interpreting it in that manner would also conflict with the statutory definition of finality in 8 U.S.C. § 1101(a)(47)(B). *Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004) ("It is beyond dispute that a federal regulation cannot empower the Government to do what a federal statute prohibits it from doing. When such a conflict occurs, it is the statute's meaning that must control.").

Nor does Respondents' assertion that DHS "appealed the entire removal order" (Doc. 9 at 1-2) change this analysis. As an initial matter, this assertion is unsupported. The

---

[1] Notably, § 1101(a)(47)(B)(ii) relates to the period in which "the alien" may seek review—it says nothing about an appeal by DHS.

Court directed that the supplemental response be supported by documentary evidence (Doc. 8 at 2), yet Respondents have not provided DHS's notice of appeal or any other document identifying the issues DHS raised before the BIA. More fundamentally, the assertion makes no sense. DHS prevailed on removability: the IJ found Petitioner inadmissible and ordered him removed to Georgia. (Doc. 9-1 at 2, 4.) DHS thus obtained the removal order it sought. The only portion of the IJ's decision adverse to DHS was the grant of withholding of removal under 8 U.S.C. § 1231(b)(3) and the CAT. (*Id.* at 2.)

Nor does it matter that Petitioner was originally placed in ordinary removal proceedings rather than withholding-only proceedings. (Doc. 9 at 2-3.) Respondents are correct that *Guzman Chavez* arose in the withholding-only context. But the principle on which it rested is not confined to that context. That principle is that a removal order and an order granting or denying protection from removal to a particular country are distinct, such that "the finality of the order of removal does not depend in any way on the outcome" of the protection determination. *Guzman Chavez*, 594 U.S. at 539.

The Supreme Court first articulated that principle in *Nasrallah v. Barr*, 590 U.S. 573 (2020). *Nasrallah* arose from ordinary removal proceedings in which the IJ ordered the alien removed but granted CAT relief and the BIA then vacated the CAT grant. *Id.* at 577. The Court explained that "a CAT order does not disturb the final order of removal" and "means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal." *Id.* at 582. Later, in *Riley v. Bondi*, 606 U.S. 259 (2025), the Supreme Court reiterated this principle: "An order denying relief under the CAT . . . does not affect the validity of a previously issued order of removal or render that order non-final." *Id.* at 269.

Applying *Nasrallah*, *Guzman Chavez*, and *Riley*, the Ninth Circuit recently explained that a ruling forms part of a final order of removal only if it "condition[s] or extinguishe[s] the executive's authority to remove the noncitizen altogether," and not when it merely restricts removal "in a certain manner." *Navarrete v. Bondi*, 170 F.4th 1214, 1223 (9th Cir. 2026). A country-specific grant of withholding or CAT relief is the latter

kind of ruling. Thus, although a protection order and a removal order may be reviewed together, they "are not the same thing and they remain separate orders." *Id.* at 1222.

Notwithstanding all of this, Respondents assert that the BIA "has multiple options before it such as affirming, dismissing, remanding for further proceedings, or they can modify the Immigration Judge's removal order to deny withholding of removal, or even grant asylum." (Doc. 9 at 3.) But for the reasons stated above, the Court is unconvinced that this represents the true menu of options before the BIA. If the BIA sustains DHS's appeal and vacates the grant of withholding and CAT relief, the removal order will remain exactly as it is now. As for Respondents' suggestion that the BIA might "even grant asylum," Respondents identify no mechanism by which the BIA could award relief that the sole appellant has not asked it to award.

At bottom, Respondents' argument is that DHS, despite having prevailed on removability, may postpone the finality of the removal order by challenging a separate ruling, thereby extending the period of mandatory detention under § 1225(b) for as long as the BIA takes to resolve the appeal of the separate ruling. As explained above, the relevant statutory and regulatory provisions do not support that result.

Nor is that result supported by common sense. Respondents remain free to execute Petitioner's final removal order by following the third-country removal process. Nothing about DHS's pending appeal of the grant of withholding relief as to *Georgia* interferes with Respondents' ability to remove Petitioner to a different country. *Guzman Chavez*, 594 U.S. at 536 ("If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States. The removal order is not vacated or otherwise set aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute."). Particularly given that understanding, it would be anomalous if DHS's decision to pursue review of the IJ's grant of withholding relief could somehow interfere with Petitioner's ability to pursue relief under *Zadvydas*, which "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from

the United States" and precludes "indefinite detention." *Zadvydas*, 533 U.S. at 689. Even assuming that "practical problems" may "arise if a removal order becomes final before the issue of withholding-only relief is decided," the Supreme Court has clarified that even when faced with "legitimate practical concerns, . . . we must nevertheless follow the statutory text and our prior precedents." *Riley*, 606 U.S. at 271.

As a final matter, the Court acknowledges that, absent exceptions that are inapplicable here, "the decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal unless a waiver of the right to appeal is filed, nor shall such decision be executed while an appeal is pending or while a case is before the Board by way of certification." 8 C.F.R. § 1003.6(a). Respondents do not cite § 1003.6(a) in their supplemental brief in this case, but their briefing in other cases suggests it may provide the foundation for their belief that "there is no valid removal order by which Respondents can remove Petitioner anywhere until the BIA concludes the appeal." (Doc. 9 at 2.)

Any such reliance on § 1003.6(a) is misplaced because the relevant "decision" here is the removal order, which nobody has appealed. The only "appeal to the Board" is DHS's appeal of the order of withholding relief—an order that, as noted, is distinct from the removal order. Thus, by its own terms, § 1003.6(a) does not call for a stay of execution of the removal order. Nor does § 1003.6(a) purport to undermine the finality of the removal order (which is the key consideration when determining which statute now governs Petitioner's detention)—execution and finality are distinct concepts.[2]

…

---

[2] Nor would the issuance of any stay under 8 C.F.R. § 1003.6(a) postpone the beginning of the removal period under 8 U.S.C. § 1231(a)(1)(B)(ii), which applies only "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien." First, as discussed, nobody has sought judicial review of the "removal order"—DHS has only sought judicial review of the distinct grant of withholding relief. Second, the BIA's review is administrative rather than judicial, and a § 1003.6(a) stay arises by regulation rather than by "court order[]." Third, DHS's own regulation interprets § 1231(a)(1)(B)(ii), the same way, tying the start of the removal period to a stay ordered by "the court" during "judicial review (including review by habeas corpus)." 8 C.F.R. § 241.4(g)(1)(i)(B).

III. *Zadvydas*

For the reasons stated above, Petitioner's removal order became administratively final no later than December 18, 2025, when the period for Petitioner to seek BIA review expired. *See* 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. § 1201.1. The "removal period" therefore began no later than December 18, 2025 and expired 90 days later. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(1)(B)(i). Petitioner's detention is therefore governed by § 1231(a)(6) and is subject to the limits recognized in *Zadvydas*.

As noted in the October 9, 2026 order, Petitioner's detention has now exceeded the presumptively reasonable six-month period identified in *Zadvydas*. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Petitioner has made that showing. He has been granted withholding of removal to Georgia, the only country designated in his removal order (Doc. 9-1 at 2, 4), and the record reflects no effort to identify a third country to which he may be removed. Respondents were directed to support their supplemental response with documentary evidence, yet they have submitted no evidence of any effort to remove Petitioner. Instead, they contend they cannot remove him "anywhere" due to their (mistaken) belief that they are precluded from executing his removal order during the pendency of DHS's appeal to the BIA. (Doc. 9 at 2.) Respondents have therefore failed to rebut Petitioner's showing, and Petitioner is entitled to release.

…

…

…

…

…

…

…

Accordingly

**IT IS ORDERED** that:

(1) The petition for writ of habeas corpus (Doc. 1) is **granted**.

(2) Respondents must **immediately release** Petitioner from custody.

(3) Within two business days, Respondents shall file a notice of compliance.

(4) The Clerk shall enter judgment accordingly and close this case.

Dated this 5th day of November, 2026.

Dominic W. Lanza
United States District Judge